UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CLINTON ALLEN CRAWFORD,

        Petitioner,

v.

JEFFREY WOODS,

        Respondent.

_____/

Case No. 2:16-cv-179

Honorable Paul L. Maloney

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Clinton Allen Crawford is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Following a six-day jury trial in the Muskegon County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, and possessing a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On June 28, 2013, the court sentenced Petitioner to a prison term of 26 to 40 years for second-degree murder, consecutive to a sentence of 2 years for the felony firearm violation.

        On July 25, 2016, Petitioner filed his habeas corpus petition raising two grounds for relief:

    I.    Where the prosecutor improperly used witness Deasyia Wyrick's prior inconsistent statement as substantive evidence and the court erred in instructing the jury that it could consider statements used to impeach a witness as substantive evidence, [Petitioner] was deprived of his due process right to a fair trial. Furthermore, trial counsel was ineffective for failing to object to the prosecutor's use of Wyrick's testimony as substantive evidence, and for failing to object to jury instruction 4.5(2).

    II.       People v. Houston should be overruled and this case remanded for [Offense Variable] 3 to be re-scored and [Petitioner] to be resentenced.

(Pet., ECF No. 1, PageID.2-3, 7.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are without merit or non-cognizable.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless or not cognizable on habeas review.  Accordingly, I recommend that the petition be denied.

## Discussion

    I.      Background

Resolving Petitioner's challenges to his convictions and sentences does not require a detailed recounting of the testimony elicited or the exhibits admitted at trial.  The Michigan Court of Appeals summarized the facts as follows:

> Jerry Huck and Scott Cooper, the victim, drove to meet defendant to buy cocaine. During the drive, Huck gave Cooper $6, and Cooper put it in his hat.  Once the two arrived at the meeting location, defendant walked up to Cooper and handed Cooper cocaine.  Huck saw Cooper take something out of his hat to give to defendant. Cooper immediately said, "let's go," and Huck drove away.  As Huck was driving away, he heard two gunshots hit his vehicle.  He looked over and saw that Cooper had been shot in the head.  Huck looked into his rearview mirror and saw defendant in the street.  Huck did not see defendant fire a gun nor did he see defendant holding a gun.  Huck originally denied driving to Muskegon to buy cocaine and originally told the police that a black male ran by his vehicle, pulled out a gun, and started shooting.  At trial, nearby security footage related to the incident showed an unidentifiable person walk up to Huck's vehicle.  The vehicle then drove away and the man seen in the street walked away from the scene. No gun or gunfire was present in the video. One of defendant's friends, Deasyia Wyrick, testified that she had only seen defendant with a gun once in the past three years.  The prosecution asked Wyrick about her interview with Steve Winston, a police detective.  The prosecution asked Wyrick if she told Winston that defendant had a gun on him "all the time." Wyrick denied making that statement. Winston subsequently testified that Wyrick, in fact, indicated that defendant had a gun on him "all the time." During its closing rebuttal argument, the prosecutor used Wyrick's prior inconsistent statement to argue that defendant possessed a gun at the time of the shooting because he had a gun on him "all the time."

(Mich. Ct. App. Op., ECF No. 6-17, PageID.1348.)

2

The prosecutor's argument invited the jurors to use Ms. Wyrick's out-of-court statement to Detective Winston—her statement that Petitioner carried a gun all the time—not only for impeachment purposes, but also as substantive evidence that Petitioner, in fact, carried a gun all the time.  Typically, inviting substantive use of an out-of-court statement would run afoul of the hearsay rules.  The standard Michigan criminal jury instruction on the topic reads:

> You have heard evidence that, before the trial, witnesses made statements that may be inconsistent with their testimony here in court.
>
> (1) You may consider an inconsistent statement made before the trial only to help you decide how believable the witnesses' testimony was when testifying here in court.

Mich. Crim. Jury Inst. 4.5.  The instruction the trial court read in Petitioner's case, however, was different:

> Evidence has been offered that one or more witnesses in this case previously made statements inconsistent with their testimony at this trial.  You may consider such earlier statements in deciding whether the testimony at this trial was truthful and in determining the facts of this case.

(Trial Tr. V, ECF No. 6-12, PageID.1241.)  The variation given by the trial court is consistent with the Michigan standard instruction; however, it is appropriate in only limited circumstances.  For example,  the jurors might consider the out-of-court statement as substantive evidence if "the earlier statement was made under oath" or if the out-of-court statement was otherwise admissible as substantive evidence under the Michigan Rules of Evidence hearsay rules.  Mich. Crim. Jury Inst. 4.5.

The trial court instructed the jurors on first-degree murder, second-degree murder, and voluntary manslaughter.  (Trial Tr. V, ECF No. 6-12, PageID.1243-1246.)  Petitioner's counsel argued that the prosecutor's proofs fell short because there was no credible evidence that showed a gun in Petitioner's hand that night.  (*Id.*, PageID.1207, 1213.)  To the extent the jurors felt otherwise, however, Petitioner's counsel argued that the crime "proven" was nothing more

3

than voluntary manslaughter because the evidence showed, at most, that Petitioner fired at the truck in a fit of understandable rage after Huck and Cooper ripped him off. (*Id.*, PageID.1218-1220.) The jury adopted the middle ground, finding Petitioner guilty of second-degree murder along with the felony firearm violation. (Trial Tr. VI, ECF No. 6-13, PageID.1279.)

The trial court initially sentenced Petitioner as set forth above. (Sentencing Tr. I, ECF No. 6-14.) Petitioner's appellate attorneys challenged the guidelines scoring of three variables. (Pet'r's Mot. for Resentencing, ECF No. 6-15.) The court rejected two of the three challenges, but accepted the third. (*Id.*) Petitioner was resentenced, to the same sentence, after his guidelines were rescored. (Sentencing Tr. II, ECF No. 6-16.)

Petitioner, with the assistance of appointed counsel, directly appealed his convictions and sentences raising the same two issues he raises in this petition. (Pet'r's Appeal Br., ECF No. 6-17, PageID.1395.) By opinion issued September 25, 2014, the Michigan Court of Appeals affirmed the trial court. (Mich. Ct. App. Op., ECF No. 6-17, PageID.1348-1350.)

Petitioner, still with the assistance of counsel, then filed an application for leave to appeal in the Michigan Supreme Court, raising the same two issues. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-18, PageID.1446.) The Michigan Supreme Court denied leave by order entered May 28, 2015. (Mich. Order, ECF No. 6-18, PageID.1444.)

This petition followed.

II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

5

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.  Prior Inconsistent Statement

Petitioner attacks the jurors' consideration of Ms. Wyrick's prior inconsistent statement as substantive evidence. He attacks on three levels: first, Petitioner argues it was prosecutorial misconduct for the prosecutor to invite that consideration in his closing argument; second, he contends it violated due process for the court to instruct the jurors they could consider the prior inconsistent statement as substantive evidence; and, third, Petitioner claims it was ineffective assistance for his counsel to fail to object to the argument or the instruction.

#### A.  Prosecutorial Misconduct

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes

available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

The Michigan Court of Appeals acknowledged that, generally, it would be error to admit Wyrick's prior inconsistent statement as substantive evidence. (Mich. Ct. App. Op., ECF No. 6-17, PageID.1349.) Nonetheless, the appellate court found no fault in the prosecutor's argument because "it was actually consistent with the trial court's instruction and with defense counsel's affirmative agreement to the instruction." (*Id.*) That determination is entirely consistent with clearly established federal law. "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings.'" *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)); *see also Bales v. Bell*, 788 F.3d 568, 577 (6th Cir. 2015). Therefore, Petitioner has failed to show any prosecutorial misconduct under these circumstances.

### B. Faulty Jury Instruction Violates Due Process

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so

infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009); *Henderson*, 431 U.S. at 152; *Levinston v. Warden*, No. 17-3167, slip op. at 5 (6th Cir. May 30, 2018). Nonetheless, the court has recognized that some erroneous instructions implicate the protections of due process. The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979).

The instructional error Petitioner alleges does not relate to the elements of the charged crimes. It relates to what the juror might consider as substantive evidence. The instruction permits jurors to consider evidence that otherwise would be excluded as hearsay under Michigan Rules of Evidence 802-804 or, perhaps, as "other bad acts" evidence under Michigan Rule of Evidence 404. There is no clearly established federal law holding that the admission of, or the jury's consideration of, such evidence violates the due process guarantee.

With regard to hearsay evidence, "[t]he first and most conspicuous failing . . . is the absence of a Supreme Court holding granting relief on [that] due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it

8

difficult to conclude that the state court of appeals' decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)).

The same holds true for "other bad acts" evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether "other bad acts" testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Because Petitioner did not object to the instruction at trial, the Michigan Court of Appeals reviewed his claim "for plain error affecting substantial rights." (Mich. Ct. App. Op., ECF No. 6-17, PageID.1349.) That review required Petitioner to demonstrate "prejudice; that is, that the outcome of the proceedings was affected by the error." (*Id.*) After reviewing the evidence against Petitioner other than the prior inconsistent statement, the court of appeals concluded Petitioner could not show any error affected the outcome of the proceedings:

> [T]he jury would have heard substantive testimony from Wyrick and from Huck that each had seen defendant with a gun before. Moreover, defendant's theory of the case, that some other drug dealer happened upon the scene and shot the victim because of a prior drug deal gone bad, while plausible in the abstract, was wholly

9

> without evidentiary support. The case against defendant, on the other hand, was proven beyond a reasonable doubt by admissible and compelling evidence even without the challenged testimony.  It was established that defendant was at the scene and engaged in a drug deal with the victim and that the victim left without paying for the drugs.  An independent witness saw only one person standing outside the victim's vehicle both before and after hearing several gunshots.  Both this witness and [the victim's] cohort, Huck, immediately called 911 after the shooting. Huck identified defendant as the shooter to the dispatch operator and later picked him out of a line-up.  And defendant made a threatening phone call to Huck as they were fleeing the scene.  Moreover, while being interviewed by the police, defendant admitted to being involved in the drug deal with the victim and not being paid for the drugs, but only after attempting to give a false alibi to the police.  Furthermore, video surveillance of the scene fails to show any signs of a mysterious "second drug dealer" at the scene who defendant claims shot the victim.

(*Id*.) The appellate court's factual determinations are well-supported in the record.  Moreover, in the absence of any Supreme Court authority holding that the admission of hearsay evidence or "other bad acts" evidence violates due process, Petitioner cannot show that the appellate court's rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on his due process claim.

### C. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To prevail, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must

10

determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In Petitioner's case, the appellate court brushed past the first prong of the Strickland analysis, instead rejecting Petitioner's claim because he could not establish prejudice:

> Defendant also argues that he was denied effective assistance of counsel by counsel's failure to object to the prosecutor's use of the prior inconsistent statement as substantive evidence. To prevail on this issue, defendant must show "the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v. Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). As discussed above, we are not persuaded that, even without the argument by the prosecutor, that a different result would have occurred.
>
> Defendant also argues that counsel was ineffective for not objecting when the trial court failed to instruct the jury that the prior statement could not be used as substantive evidence of guilt. Again, however, given the strength of the case against defendant and the lack of evidence to support his version of events, we are

11

> not persuaded that, even had the trial court corrected its instruction, it is likely that a different result would have occurred.

(Mich. Ct. App. Op., ECF No. 6-17, PageID.1350.)

The court of appeals' decision to forego an analysis of the reasonableness of Petitioner's counsel's conduct is entirely consistent with clearly established federal law. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Moreover, the appellate court's reasoning is well-supported by the record. If counsel had objected to the argument or the instruction, and if the trial court had been swayed by the objection, Petitioner still had to contend with Ms. Wyrick's testimony that she had seen him with a gun before. That testimony was consistent with Huck's testimony. Whether Petitioner carried a gun "all the time" or only occasionally, did not significantly impact the evidence that he carried one that night and fired it at Huck's truck.

The court of appeals did not address the reasonableness of Petitioner's counsel's acquiescence to the argument and the instruction, but this Court's review of the record supports the conclusion that counsel's decision to not object was purposeful and reasonable. Petitioner centers his argument on only the out-of-court statement that was elicited to impeach Ms. Wyrick. That was not the only out-of-court statement used to impeach a witness. Petitioner's counsel used Huck's out-of-court statements to police the night of the shooting, as well as Huck's preliminary examination testimony, to impeach Huck. (Trial Tr. III, ECF No. 6-10, PageID.909-932.) Among the statements that Huck had made out-of-court was his testimony at the preliminary examination:

"I hadn't any more than pulled off and he – they started shooting." (Prelim. Exam. Tr., ECF No. 6-2, PageID.129.) Huck's statement that "they" fired shots, instead of simply saying "he" fired shots, was the only other evidence admitted at trial to support the version of events that Petitioner eventually told the police: that another drug dealer was present and fired the shots. Having the jurors weigh whether Wyrick had seen Petitioner with a gun once or many times certainly might seem a small price to pay to ensure that the jury could substantively corroborate Petitioner's story that there was another drug dealer present.

Whether Petitioner's ineffective assistance claim fails on the first *Strickland* prong, the second *Strickland* prong, or both is immaterial. His claim fails. He has not shown that the Michigan Court of Appeals determination is contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to habeas relief.

### IV. Scoring of Offense Variable 3

The Michigan sentencing guidelines require the court to assign a score to Offense Variable (OV) 3, which concerns physical injury to the victim. Mich. Comp. Laws § 777.33. The guidelines indicate that a score of 100 points is appropriate if a victim was killed and the sentencing offense is not a homicide. *Id*. In Petitioner's case, he was sentenced for a homicide; therefore, even though Cooper died, a score of 100 points would not be appropriate.

Petitioner notes:

> A score of 25 points under OV 3 is permitted where "Life threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). The issue in [*People v. Houston*, 473 Mich. 399 (2005)] was whether a score of 25 points can be assessed where the sentencing offense is a homicide crime and the victim died. The four-justice majority in *Houston*, authored by then-Justice Young, interpreted the statutory language to require the assessment of 25 points under OV 3 in homicide offense, finding that a "life-threatening" injury occurred in all such cases, even where, as in the case at bar, the victim suffered only a single injury which resulted in quick or instantaneous death.

13

(Pet'r's Appeal Br., ECF No. 6-17, PageID.1415-1416.)  Petitioner contends that he was erroneously scored 25 points.  He bases his argument on a claim that *Houston* was wrongly decided.  The Michigan Court of Appeals rejected the claim because the issue was controlled by *Houston*.  (Mich. Ct. App. Op., ECF No. 6-17, PageID.1350.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley*, 465 U.S. at 50); *see also Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004) (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within

state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

Petitioner does not even argue that the facts found by the court at sentencing were materially false or based on false information.  Instead, Petitioner argues only that the court should have reached different results on OV3 under state law.  The state courts have already ruled against him on that claim.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68 (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit counsels "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).  Accordingly, Petitioner's OV3 scoring claim is simply not cognizable on habeas review.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Date:  April 2, 2019              /s/ *Maarten Vermaat*
                                  MAARTEN VERMAAT
                                  U.S. MAGISTRATE JUDGE



**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).